IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CIVIL ACTION NO. |
| | ) | C91-5528 B |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | COMMENCEMENT BAY |
| | ) | NEARSHORE/TIDEFLATS |
| ASARCO INCORPORATED, AND | ) | SUPERFUND SITE -- |
| POINT RUSTON, LLC | ) | ASARCO TACOMA SMELTER |
| Defendants. | ) | |
| | ) | SECOND AMENDMENT TO |
| | ) | CONSENT DECREE |
| _____ | ) | |

ASARCO TACOMA SMELTER CONSENT DECREE
SECOND AMENDMENT PAGE 1

# I.   BACKGROUND

1.      On January 3, 1997, the Court entered a consent decree in this action (the "Asarco Tacoma Smelter Consent Decree") providing for the cleanup by ASARCO Incorporated ("Asarco") of the former Asarco Smelter and Slag Peninsula in Tacoma, Washington.  The consent decree was entered into by the United States Environmental Protection Agency ("EPA") and Asarco pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), as amended, 42 U.S.C. § 9601 *et seq.*

2.      On November 2, 2000, EPA and Asarco amended Section XX, Stipulated Penalties, of the Asarco Tacoma Smelter Consent Decree to add three new subparagraphs.  The 2000 amendment (the "First Amendment") to the Asarco Tacoma Smelter Consent Decree added significant stipulated penalties for Asarco's failure to achieve specified milestone dates.

3.      On July 14, 2000, EPA issued a Record of Decision (ROD) for Operable Unit 06, the Asarco Sediments/Groundwater Site, of the Commencement Bay Nearshore/Tideflats Superfund Site.  Operable Unit 06 encompasses the groundwater under the Asarco Smelter, approximately 150 acres of offshore intertidal and subtidal lands, and the Yacht Basin formed by the Slag Peninsula, all located in Ruston and Tacoma, Pierce County, Washington.

4.      On March 5, 2002, EPA issued a Unilateral Administrative Order for Remedial Design and Remedial Action, EPA Docket No. 10-2002-0046, requiring Asarco to perform the Remedial Design and Remedial Action (RD/RA) for Operable Unit 06, the Asarco Sediments/Groundwater Site.

5.      In February 2003, a consent decree was entered in the matter of United States v.

Asarco Incorporated and Southern Peru Holdings Inc., No. CV 02-2079-PHX-RCB (the

"Arizona consent decree").  Among other provisions, the Arizona consent decree provided a

temporary (three year) cap on the amount Asarco would have to spend on certain types of

environmental obligations at sites around the country, including the Tacoma Smelter.  The

decree also temporarily suspended the imposition of certain types of stipulated penalties under

federal consent decrees, including the Asarco Tacoma Smelter Consent Decree, should certain

types of deadlines established in those decrees not be met.

6.      In February 2005, ASARCO Incorporated merged into a newly formed Delaware

limited liability company, ASARCO LLC ("Asarco LLC").  Asarco LLC was the surviving

entity of that merger, and assumed all the obligations of Asarco Incorporated, including those

relating to the performance of the obligations of the Asarco Tacoma Smelter Consent Decree and

amendments thereto.

7.      On August 9, 2005, Asarco LLC filed for bankruptcy protection under chapter 11

of the bankruptcy code in the United States District Court for the Southern District of Texas

("Bankruptcy Court").

8.      On December 8, 2005, Asarco LLC entered into an agreement with MC

Construction Consultants, Inc. ("MC Construction"), to sell approximately 97 acres of its real

property (the "Purchased Property") located in Tacoma and Ruston, Washington.  The Purchased

Property includes parts of the former Asarco Smelter Site, Operable Unit 02, and parts of the

Asarco Sediments/Groundwater Site, Operable Unit 06.

ASARCO TACOMA SMELTER CONSENT DECREE
SECOND AMENDMENT PAGE 3

9.     Under the terms of the sale agreement (the "Tacoma Purchase Agreement"), MC Construction and EPA must reach agreement on remediation tasks associated with Operable Units 02 and 06.  Paragraph 5.3 of the Tacoma Purchase Agreement states:

> Prior to Closing and as promptly as it may be obtained, [MC Construction] shall provide [Asarco] with an instrument or document issued by the EPA…indicating approval of the transfer of the Liabilities, as such Liabilities relate to the environmental matters, that [MC Construction] will assume with respect to the Property indicating approval of [MC Construction's] qualifications with respect to the transfer of such Liabilities….

10.     On January 30, 2006, the Bankruptcy Court approved the sale of the Smelter Property to MC Construction.  Paragraph 14 of the Sale Order provides that the Sale Order shall not become effective until:

> (i) the EPA Lien Agreement is approved by the Bankruptcy Court; and (ii) the Buyer's agreement with the EPA, as contemplated by Section 5.3 of the Agreement, has been approved and entered by the United States District Court for the Western District of Washington, Tacoma Division.

MC Construction subsequently assigned to Point Ruston, LLC ("Point Ruston") its rights under the Tacoma Purchase Agreement.  Point Ruston is a limited liability company incorporated in Washington, with its principal place of business in Tacoma, Washington.

11.     EPA entered into negotiations with Point Ruston for remediation of the Asarco Smelter Site, Operable Unit 02, and the Asarco Sediments/Groundwater Site, Operable Unit O6 (collectively referred to as the "Site").  This Amendment embodies the agreement between EPA and Point Ruston for remediation of the Asarco Smelter Site, Operable Unit 02, and the Asarco Sediments/Groundwater Site, Operable Unit 06.

12.     This Second Amendment to the Asarco Tacoma Smelter Consent Decree (the "Second Amendment") adds a new party, Point Ruston, to the Consent Decree.

13.     Point Ruston plans to develop the Purchased Property for residential mixed-use. It is Point Ruston's intent that the lower portion of the Purchased Property will consist of condominiums, commercial, retail, and public use facilities.  There will be single-family dwellings only on the portion of the Purchased Property known as Stack Hill.

14.      Point Ruston represents that it is a Bona Fide Prospective Purchaser within the meaning of Section 101(40) of CERCLA, 42 U.S.C. § 9601(40), and intends to take all steps to maintain its status as Bona Fide Prospective Purchaser, and for purposes of this Second Amendment EPA accepts this representation.  Point Ruston represents, and for the purposes of this Second Amendment EPA relies on the representation, that Point Ruston has had no involvement with the Purchased Property or the Site and that Point Ruston has carried out all appropriate inquiries into the prior ownership and uses of the facility prior to purchasing the Purchased Property.  EPA agrees that the Work to be performed by Point Ruston under this Second Amendment is consistent with "taking reasonable steps," within the meaning of Section 101(40) of CERCLA, 42 U.S.C. § 9601(40), to stop continuing releases, prevent threatened future releases, and prevent or limit human, environmental, or natural resources exposure to previous releases.

15.     Point Ruston certifies that, to the best of its knowledge and belief, it has fully and accurately disclosed to EPA all information known to Point Ruston, and all information in the possession or control of its officers, directors, contractors and agents which relates in any way to

any Existing Contamination or any past or potential future release of hazardous substances, pollutants or contaminants at or from the Site.  Point Ruston also certifies that to the best of its knowledge and belief it has not caused or contributed to a release or threat of release of hazardous substances or pollutants or contaminants at the Site.  If the United States determines that information provided by Point Ruston in these certifications is not materially accurate and complete, the Second Amendment, within the sole discretion of the United States, shall be null and void and the United States reserves all rights, and Point Ruston reserves all defenses, each may have.

16.     The Asarco Tacoma Smelter Consent Decree remains in effect and binding on the United States and Asarco LLC, and nothing in this Second Amendment alters in any way the rights, duties, or obligations of the United States and Asarco as set forth in the Consent Decree, except that any obligations imposed on Asarco by the Consent Decree are hereby suspended until and unless Point Ruston defaults on its obligations.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed that, as provided in Section XXXI (Modification), the Asarco Tacoma Smelter Consent Decree is hereby amended as follows, and Point Ruston shall have the rights, duties, and obligations set forth below:

## II.     POINT RUSTON'S RIGHTS, BENEFITS, AND OBLIGATIONS

17.     Point Ruston is added to the Asarco Tacoma Smelter Consent Decree as a party. The Consent Decree applies to Point Ruston, and Point Ruston is subject to all obligations, rights, and benefits of the Consent Decree, except as specified otherwise below.  Point Ruston is not subject to any provisions of the First Amendment to the Asarco Tacoma Smelter Consent

ASARCO TACOMA SMELTER CONSENT DECREE
SECOND AMENDMENT PAGE 6

Decree.  This Second Amendment also imposes additional obligations on, and confers additional

rights and benefits to, Point Ruston, beyond the obligations, rights, and benefits, set forth in the

Asarco Tacoma Smelter Consent Decree.  As applied to Point Ruston, references in the Asarco

Tacoma Smelter Consent Decree to "Asarco" shall instead mean "Point Ruston" and references

to the "Consent Decree" shall mean the "Asarco Tacoma Smelter Consent Decree as modified by

this Second Amendment."

      A.      Paragraph 7 applies to Point Ruston, except that the Second Amendment requires

response action in Operable Unit 02 as well as in certain portions of Operable Unit 06.

      B.      Paragraph 10 applies to Point Ruston, except that the requirements of the

Administrative Order on Consent have been satisfied, and except that EPA issued a Record of

Decision for subsurface groundwater and offshore sediments (the "OU6 ROD") on July 14,

2000.

      C.      Paragraph 13 does not apply to Point Ruston.

      D.      (*i*)      The definitions in Paragraph 21 apply to Point Ruston, except as follows:

            (a)      "Agreement in Principle" does not apply to Point Ruston.

            (j)      "Future Response Costs" as it applies to Point Ruston, does not

include Interim Response Costs or Interest on Past Response Costs.

            (k)      "Interim Response Costs" does not apply to Point Ruston.

            (m)      "Master Development Plan" does not apply to Point Ruston.

            (p)      "Operation and Maintenance" applies, except for the reference to

"RDRs."

ASARCO TACOMA SMELTER CONSENT DECREE
SECOND AMENDMENT PAGE 7

(r)    "Parties" shall mean the United States, Asarco, and Point Ruston.

(s)    "Past Response Costs" does not apply to Point Ruston.

(t)    "Performance Standards" applies, except for the phrase ", and Section 2.1 of the RDRs."  However, as to Point Ruston, that definition shall be amended to also include the Remedial Action Objectives in the OU 6 ROD that apply to the Nearshore/Offshore Sediments, the "performance standards" in the SOW, and performance standards in the Final Design Report for Sediment Cap: Marine Sediments and Groundwater (December 2002) ("Final Design Report for Sediment Cap") approved by EPA.

(w)    "Record of Decision" or "ROD" applies and shall also include the EPA Record of Decision for Operable Unit 06 of the CB N/T site, signed on July 14, 2000, by the Regional Administrator, EPA Region 10, and all attachments thereto ("OU6 ROD").

(x)    "Remedial Action" applies, except for the reference to "RDRs," and except that as applied to Point Ruston, "Remedial Action" shall not include activities completed by Asarco as described in the SOW, unless EPA determines that Performance Standards applicable to such activities have not been met.  However, with respect to OU6, "Remedial Action" shall mean the following activities to be undertaken by Point Ruston in accordance with the ROD, SOW and the Final Design Report for Sediment Cap:  capping the Nearshore/Offshore sediments area as specified in the Operable Unit 06 ROD; dredging shallow sediments in the Yacht Basin, as described in the SOW; long-

term monitoring of groundwater, as described in the SOW; monitoring the

Nearshore/Offshore sediment cap post-construction to confirm that it remains in place,

continues to isolate the underlying contaminated sediments and does not become

recontaminated; and using institutional controls to prevent activities that damage the cap.

"Remedial Action" also includes installation of a temporary cap, as described in the

SOW, prior to public access or occupancy on any portion of the Purchased Property,

unless otherwise approved by EPA.

(z)    "Remedial Design" shall mean final plans and specifications for

the Remedial Action (1) prepared by Asarco and approved by EPA or (2) prepared by

Point Ruston and approved by EPA or (3) prepared by Asarco, amended by Point Ruston,

and approved by EPA pursuant to Paragraph 17.J of this Second Amendment, whichever

is most recent.

(dd)    "Site" applies and shall also include OU6, consisting of the

approximately 150 acres of sediments offshore of the Tacoma Smelter Site, the Yacht

Basin and the groundwater underneath the Tacoma Smelter Site.  Appendix E to this

Second Amendment depicts the "Site" as that term applies to Point Ruston.

(ff)    "Statement of Work" or "SOW" shall mean the document attached

to this Second Amendment as Appendix F, and any amendments thereto.

(*ii*)    In addition, the following new definitions are added:

(ll)    "Phase" shall mean a portion of the Remedial Action to be

performed in a discrete geographic area of the Site, as approved by EPA pursuant to

ASARCO TACOMA SMELTER CONSENT DECREE
SECOND AMENDMENT PAGE 9

Paragraph 31 of the Asarco Tacoma Smelter Consent Decree as modified by Paragraph 17.J of this Second Amendment.

(mm)   "OU6 ROD" shall mean the EPA Record of Decision for Operable Unit 06 of the CB N/T site, signed on July 14, 2000, by the Regional Administrator, EPA Region 10, and all attachments thereto.

(nn)   "Bona Fide Prospective Purchaser" or "BFPP" shall mean a person described in CERCLA § 101(40).

(oo)   "Existing Contamination" shall mean:

(1)  any hazardous substances, pollutants or contaminants present or existing on or under the portion of the Site that is not within the definition of Purchased Property, or present or existing on or under those portions of the Purchased Property located within OU6, as of the Effective Date of this Second Amendment;

(2)  any hazardous substances, pollutants or contaminants that migrated from the portion of the Site that is not within the definition of Purchased Property, or migrated from those portions of the Purchased Property located within OU6, prior to the effective date of this Second Amendment; and

(3)  any hazardous substances, pollutants or contaminants presently at the Site that migrate onto or under or from the portion of the Site that is not within the definition of Purchased Property, or that migrate onto or under or from those portions of the Purchased Property located within OU6, after the effective date of this Second Amendment.

ASARCO TACOMA SMELTER CONSENT DECREE
SECOND AMENDMENT PAGE 10

E.      Paragraph 22 does not apply to Point Ruston.  However, the United States and Point Ruston agree that the objectives of the parties in entering into this Second Amendment are: (a) to protect public health, welfare, and the environment by the design and implementation of response actions at the Site by Point Ruston; (b) to reimburse certain response costs of the Plaintiff, as set forth herein; and (c) to settle and resolve, subject to the reservations in Paragraph 101 of the Asarco Tacoma Smelter Consent Decree as modified by Paragraph 17.FF of this Second Amendment, the potential liability of Point Ruston under CERCLA and RCRA as provided in this Second Amendment.

F.      Paragraph 23 applies to Point Ruston, except for references to the "RDRs."

G.      Paragraph 24 applies to Point Ruston, except for references to the "RDRs," and except that Point Ruston commits to reimburse the United States only for Future Response Costs as provided in Paragraph 70 of the Asarco Tacoma Smelter Consent Decree.

H.      Paragraph 25 does not apply to Point Ruston.

I.      Paragraph 28 applies to Point Ruston, except that as to Point Ruston, "Successor-in-Title" includes, but is not limited to, a condominium association formed under RCW 64.34, but shall not mean unit owners as defined in RCW 64.34.020(32) or persons who acquire only an interest in any portion of Stack Hill.  In addition to the requirement that any obligation of Point Ruston regarding Section IX (Access and Institutional Controls) be binding upon any Successor-in-Title, any Successor-in-Title must also assume and be bound by any O&M obligations existing under this Second Amendment.  Absent EPA written consent to the contrary, the obligations to be assumed by any Successor-in-Title relates to the entire Purchased Property even

ASARCO TACOMA SMELTER CONSENT DECREE
SECOND AMENDMENT PAGE 11

if that successor is acquiring less than the entire Purchased Property.  In addition, the obligations

of Point Ruston with respect to the provision of access and the implementation of institutional

controls under Section IX (Access and Institutional Controls) of the Asarco Tacoma Smelter

Consent Decree, as modified by this Second Amendment, shall be binding on persons who

acquire an interest in any portion of Stack Hill, but such obligations shall relate solely to Stack

Hill, and not to the entire Purchased Property.

  J.  Paragraph 30 does not apply to Point Ruston.  As to Point Ruston it is replaced in

its entirety with the following:

    30.  <u>Remedial Design</u>.

     Asarco substantially completed the Remedial Design for the Remedial

Action described in the OU2 and OU6 RODs.  Point Ruston shall meet the requirements

for the Remedial Action specified in the RODs, the SOW and all Remedial Designs

approved by EPA.  However, Point Ruston may modify the plans and specifications for

the remaining OU2 remediation tasks, and for those OU6 remediation tasks required by

this Second Amendment, and shall submit them to EPA for review and approval.  The

Remedial Design Work Plan shall provide for the design of the Remedial Action.  Upon

its approval by EPA, the Remedial Design shall be incorporated into and become

enforceable under this Second Amendment.

     a.  Within 60 days after EPA's issuance of an authorization to proceed

pursuant to Paragraph 29 of the Asarco Tacoma Smelter Consent Decree, Point Ruston

ASARCO TACOMA SMELTER CONSENT DECREE
SECOND AMENDMENT PAGE 12

shall submit to EPA and the State a schedule for preparation of addenda to the Remedial Design prepared by Asarco.

b.      Point Ruston shall submit to EPA and the State all design addenda, plans, submittals and other remedial design deliverables in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans and Other Submissions) of the Asarco Tacoma Smelter Consent Decree.

c.      Point Ruston may submit to EPA, for approval, one or more design addenda allowing for the Remedial Action to be performed in Phases.  Separate design addenda may be prepared for the Phases of the sediment cap, the Slag Peninsula, and for work in the Yacht Basin, or they may be incorporated into another of the addenda.   Each design addendum shall include a description of the work to be performed including applicable Performance Standards, construction quality assurance standards, and plans and specifications.  The addendum must include detailed information on how the Phase will be integrated with adjacent Phases.  Approval of the addenda shall be within the discretion of EPA.  In determining whether or not to approve the design addendum for a particular Phase EPA shall consider:

* Whether the addendum is consistent with the RODs and the SOW;

* Whether the addendum provides adequate protections regarding all other portions of the Site;

* Whether the proposed addendum is consistent with an orderly, integrated and efficient implementation of the Remedial Action as a whole;

ASARCO TACOMA SMELTER CONSENT DECREE
SECOND AMENDMENT PAGE 13

\* The number and nature of Phases already approved;

\* Point Ruston's compliance with the terms of the Second Amendment and its prior performance of Work; and

\* Any other factor related to the effective achievement of the Performance Standards or other goals of the Consent Decree as modified by this Second Amendment.

        d.      Design addenda, plans, submittals and other remedial design deliverables shall meet the requirements specified for the Remedial Action in the RODs, the SOW, and all Remedial Designs approved by EPA.

        e.      Design addenda, plans, submittals and other remedial design deliverables for each Phase of Remedial Action shall be completed by Point Ruston and approved by EPA before fieldwork begins on that Phase.

K.      Paragraph 31 does not apply to Point Ruston.  As to Point Ruston it is replaced in its entirety with the following:

        31.      Remedial Action.

        a.      Point Ruston shall meet the requirements specified for the Remedial Action in the RODs, the SOW and all Remedial Designs approved by EPA. Point Ruston shall submit to EPA and the State addenda to existing Work Plans and related documents prepared by Asarco for the Remedial Action.  Upon EPA approval, the addenda will become part of the Remedial Action Work Plan.  The approved Remedial Action Work Plan shall provide for construction and implementation of the Remedial

Action and achievement of the Performance Standards, in accordance with this Consent Decree, the Second Amendment, the SOW and the Remedial Design approved by EPA. Point Ruston shall implement the Construction Health and Safety Plan prepared by Asarco for the Site, which conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. §1910.120.

       b.      Point Ruston shall prepare a Construction Management Plan ("CMP") for the Remedial Action, which may include a schedule for implementation of the Remedial Action in Phases.  In addition, for each Phase a separate CMP will be prepared unless Phases are being constructed concurrently in which case one CMP for these Phases may be prepared.  Each CMP shall include a description of the work to be performed, and a schedule for performing all Remedial Action required in that Phase. Approval of the CMPs will be within the discretion of EPA.  In determining whether or not to approve a CMP for a particular Phase EPA shall consider:

     * Whether the Phase as proposed is consistent with the requirements of the RODs and the SOW;

     * Whether the Phase as proposed provides adequate protections regarding all other portions of the Site;

     * Whether Point Ruston is prepared to provide the necessary financial assurances as required by Paragraph 17.R of the Second Amendment;

     * Whether the Phase as proposed is consistent with an orderly, integrated and efficient implementation of the Remedial Action as a whole;

ASARCO TACOMA SMELTER CONSENT DECREE
SECOND AMENDMENT PAGE 15

\* The number and nature of Phases already approved;

\* Point Ruston's compliance with the terms of the Second Amendment and its prior performance of Work; and

\* Any other factor related to the effective achievement of the Performance Standards or other goals of the Consent Decree as modified by this Second Amendment.

      c.     After a reasonable opportunity for review and comment by the State, and upon EPA approval of addenda to existing work plans, related documents, and the Construction Management Plan and schedule, Point Ruston shall implement the Remedial Action described in the SOW.  Point Ruston shall submit to EPA and the State all plans, submittals, or other deliverables required under the approved Remedial Action Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans and Other Submissions) of the Asarco Tacoma Smelter Consent Decree.  Unless otherwise directed by EPA, Point Ruston shall not commence physical Remedial Action activities at the Site prior to approval of the Remedial Action Work Plan.

      d.     Capping of the approximately 10.5 acres of Nearshore/Offshore sediments with the sand/silt cap pursuant to the requirements of the OU 6 ROD, the Remedial Design, the SOW and the approved design addenda shall be completed within one year of the Effective Date of this Second Amendment.  Excavation of the shallow sediments in the Yacht Basin per the requirements of the SOW and the approved design

ASARCO TACOMA SMELTER CONSENT DECREE
SECOND AMENDMENT PAGE 16

addenda shall be completed prior to the Certification of Completion for the second Phase by EPA.

        e.      Point Ruston shall continue to implement the Remedial Action and O & M until the Performance Standards are achieved and for so long thereafter as is otherwise required under the Consent Decree as modified by this Second Amendment.

        f.      Notwithstanding any other provision of this Second Amendment (except for Paragraph 17.FF), after Point Ruston completes construction of the sediment cap required in a Phase and EPA issues a Certification of Completion for that Phase, Point Ruston shall no longer be required to meet Performance Standards with respect to the capped sediments (including making repairs to correct the effects of recontamination, settling, subsidence, erosion, physical disturbances, or other forces); *provided however*, that if the sediment cap does not meet Performance Standards at the completion of the Remedial Action, then  EPA may withdraw its Certification(s) of Completion for the cap until either (i) Point Ruston demonstrates that its actions were not responsible for the cap no longer meeting Performance Standards, or (ii) Point Ruston takes those actions necessary to again meet Performance Standards.

L.     Paragraph 32 applies to Point Ruston, however, the definition of the scope of the remedy in Paragraph 32(b) is amended to also include response actions in the following portions of OU 6: 1) Nearshore/Offshore sediments area for which the OU 6 ROD called for capping, and 2) shallow sediments in the Yacht Basin as described in the SOW.  Such response actions shall include the following activities to be undertaken by Point Ruston in accordance with the ROD,

SOW and the final Remedial Design and Remedial Action Work Plans approved by EPA: capping the Nearshore/Offshore sediments area as specified in the Operable Unit 06 ROD; dredging shallow sediments in the Yacht Basin, as described in the SOW; long-term monitoring of groundwater; monitoring the Nearshore/Offshore sediment cap post-construction to confirm that it remains in place, continues to isolate the underlying contaminated sediments and does not become recontaminated; and using institutional controls to prevent activities that damage the cap.

  M. Paragraph 38 does not apply to Point Ruston.  It is replaced in its entirety with the following:

    38. <u>Point Ruston's Obligation to Perform Further Response Actions</u>.

    If EPA selects further response actions for the Site, Point Ruston shall undertake such further response actions to the extent necessary to meet Performance Standards.  Point Ruston may invoke the procedures set forth in Section XIX (Dispute Resolution) of the Asarco Tacoma Smelter Consent Decree to dispute (1) EPA's determination that further response action is necessary to meet Performance Standards, or (2) EPA's selection of the further response actions.  Such disputes shall be resolved pursuant to Paragraph 83 of the Asarco Tacoma Smelter Consent Decree.

  N. Paragraph 40 applies to Point Ruston, except that the third sentence is replaced with the following:  "A Site Quality Assurance Plan ("QAPP") was prepared by Asarco and approved by EPA.   The QAPP prepared by Asarco may be used except where activities not covered under the existing QAPP are performed."

ASARCO TACOMA SMELTER CONSENT DECREE
SECOND AMENDMENT PAGE 18

O.      Paragraph 44 applies to Point Ruston, except that its requirements apply beginning on the date that Point Ruston acquires the Purchased Property.

P.      Paragraph 47 applies to Point Ruston, except that the third sentence of subparagraph (d) is replaced with the following:  "EPA reserves the right to approve the conveyance language as it relates to the covenants, conditions and restrictions to ensure that the language is consistent with this Second Amendment."

Q.      Paragraph 48 applies to Point Ruston, except that the deadline for submitting progress reports shall be the fifteenth day of every month following the Effective Date of this Second Amendment until EPA issues a Final Certification of Completion of Remedial Action as described in Paragraph 65 of the Asarco Tacoma Smelter Consent Decree, as modified by Paragraph 17.T of this Second Amendment, and Point Ruston shall, at the same time, send a copy of each progress report to Asarco.

R.      Paragraph 62 does not apply to Point Ruston.   As to Point Ruston, it is replaced in its entirety with the following:

62.      Assurance of Ability to Complete Work.

a.      Attached hereto in Appendix G are personal guarantees from, MC Construction, Michael A. Cohen, Julie McBride, Kenneth J. and Kathryn Thomsen, and their marital communities, assuring that all Work required under this Second Amendment will be completed. However, when EPA issues the Final Certification of Completion for the entire Remedial Action as provided in Paragraph 65 of the Asarco Tacoma Smelter Consent Decree as modified by Paragraph 17.T of this Second Amendment, Point Ruston may seek to substitute other financial

assurance mechanisms of the type set forth in subparagraph (c) to cover the remaining Work under the Decree.

      b.      Contemporaneous with the closing for the acquisition of the Purchased Property, Point Ruston shall execute the necessary documentation to ensure that the United States has a first priority lien or mortgage on the Purchased Property (the "Lien").  However, the physical area referred to as Stack Hill need not be a part of the Purchased Property subject to the Lien. The Lien shall reflect the United States' potential claim under this Second Amendment and reflect that such liability is fairly estimated, for the purposes of this Second Amendment, at $28 million.  The necessary instruments for this security will be shared with and approved by the United States prior to filing.

      c.      Upon request for removal of the Lien from a discrete physical portion of the Purchased Property associated with any Phase of the Remedial Action Point Ruston wishes to proceed with, Point Ruston shall submit to EPA a written estimate of the costs that may be incurred in performing the Remedial Action within the applicable Phase.  This estimate must also include the potential costs EPA might incur should it be required to take over completion of the work on that Phase should the work be left not completed.  EPA shall review those estimates and make its determination as to the necessary level of financial security for that Phase.  Point Ruston shall establish financial security in the amount of the approved cost estimate for that Phase, and shall deposit the financial security documents into Escrow with LandAmerica TransNation Title Insurance and Escrow Company or any other mutually agreed-to Escrow agent. Within fifteen (15) days after the financial security documents are deposited into Escrow,

ASARCO TACOMA SMELTER CONSENT DECREE
SECOND AMENDMENT PAGE 20

EPA shall remove the Lien on all parcels to be remediated in that Phase.  Immediately after

receiving notice from EPA that the Lien has been removed, the Escrow Holder shall release the

financial security documents to EPA.   The commencement of any Work Takeover pursuant to

Paragraph 102 of the Asarco Tacoma Smelter Consent Decree shall trigger EPA's right to

receive the benefit of any financial security mechanisms provided in this Paragraph and at such

time EPA shall have immediate access to resources guaranteed under any such mechanism

whether in cash or in kind.  EPA may use the funds from the financial security for any Phase: to

complete the Remedial Action at that Phase; to apply to any costs owed by Point Ruston under

this Second Amendment; or to perform any Work at the Site required under the Second

Amendment.  Financial security shall be established, at Point Ruston's election, in one or more

of the following forms:

1.      A surety bond unconditionally guaranteeing payment and/or performance of Remedial Action in the applicable Phase;

2.      One or more irrevocable letters of credit, payable to or at the direction of EPA, in the amount of the approved cost estimate for the applicable Phase;

3.      A trust fund established for the benefit of EPA in the amount of the approved cost estimate for the applicable Phase;

4.      A policy of insurance in the amount of the approved cost estimate for the applicable Phase that provides EPA with acceptable rights as a beneficiary; or

5.      A demonstration by Point Ruston that it meets the financial test criteria of 40 C.F.R. § 264.143(f) with respect to the approved cost estimate for the applicable Phase, provided that all other requirements of 40 C.F.R. § 264.143(f) are satisfied.

Point Ruston shall maintain the financial security until EPA provides Certification of Completion

with respect to the applicable Phase of Remedial Action, as provided in Paragraph 65 of the

Asarco Tacoma Smelter Consent Decree as modified by Paragraph 17.T of this Second

Amendment.  Point Ruston and EPA shall follow this process for each Phase of Remedial Action

for which Point Ruston requests a partial removal of the Lien.

       S.      Paragraph 63 does not apply to Point Ruston.

       T.      Paragraph 65 does not apply to Point Ruston.   As to Point Ruston it is replaced in

its entirety with the following:

            65.    <u>Certification of Completion</u>.

           (1)  <u>Certification of Phases</u>

                 a.      Within ninety (90) days after Point Ruston concludes that one or

more Phases of Remedial Action has been fully performed, Point Ruston shall schedule

and conduct a pre-certification inspection to be attended by Point Ruston, EPA and the

State.  If, after the pre-certification inspection, Point Ruston still believes that one or

more Phases of Remedial Action has been fully performed, it shall within thirty (30) days

of the inspection submit to EPA for approval, with a copy to the State, a written report as

described in Section 3.2.1 of the SOW, requesting Certification of Completion with

respect to that Phase or Phases.  In the report, a registered professional engineer and Point

Ruston's Project Coordinator shall state that the Phase (or Phases) of Remedial Action

has been completed in accordance with the requirements of this Second Amendment.

The written report shall include as-built drawings signed and stamped by a professional

engineer.  The report shall contain the following statement, signed by a responsible

corporate official of Point Ruston or Point Ruston's Project Coordinator:

ASARCO TACOMA SMELTER CONSENT DECREE
SECOND AMENDMENT PAGE 22

To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submittal is true, accurate and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

b.      If, after completion of the pre-certification inspection, receipt and review of the written report, and reasonable opportunity to review and comment by the State, EPA determines that the Phase (or Phases) of Remedial Action has not been completed in accordance with this Second Amendment, EPA will notify Point Ruston in writing of the activities that must be undertaken to complete the Phase (or Phases) of Remedial Action in accordance with this Second Amendment.  EPA will set forth in the notice a schedule for performance of such activities consistent with the Second Amendment, or require Point Ruston to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans and Other Submissions) of the Asarco Tacoma Smelter Consent Decree.  Point Ruston shall perform all activities described in the notice in accordance with the specifications and schedules established pursuant to this Paragraph, subject to its right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution) of the Asarco Tacoma Smelter Consent Decree.

c.      If EPA concludes, based on the initial or any subsequent report requesting Certification of Completion and after a reasonable opportunity for review and comment by the State, that one or more Phases of Remedial Action have been performed in accordance with this Second Amendment, EPA will in a timely manner so certify in writing to Point Ruston.  Provided, however, that EPA shall not issue any Certification of

Completion until it determines that Point Ruston has completed all Remedial Action that

it is required to undertake in the Slag Peninsula and on the approximately 10.5 acres of

Nearshore/Offshore Sediments within OU6 where a sand/silt sediment cap is required;

and provided further, that EPA shall not issue Certification(s) of Completion for the last

six (6) acres of the developable waterfront property of the Purchased Property until (a) it

determines that Point Ruston has completed all Remedial Action that it is required to

undertake in OU6, or (b) Point Ruston has provided financial security in one of the forms

described in Paragraph 62 of the Asarco Tacoma Smelter Consent Decree, as modified by

Paragraph 17.R of this Second Amendment, and in an amount sufficient to cover the cost

of performing the remaining Remedial Action Point Ruston is required to undertake in

OU6.  It is also provided that EPA shall not issue a Certification of Completion for the

second Phase until Point Ruston has completed the excavation of the shallow sediments

in the Yacht Basin per the requirements of the SOW and the approved design addenda.

      (2)    <u>Final Certification of Completion</u>

      a.    In order to ensure that completion of all Phases results in

completion of the Remedial Action and satisfaction of the Performance Standards, within

ninety (90) days after Point Ruston concludes that all Remedial Action has been

performed and all the Performance Standards have been attained, Point Ruston shall

schedule and conduct a pre-certification inspection to be attended by Point Ruston, EPA

and the State.  If, after the pre-certification inspection, Point Ruston still believes that all

Remedial Action has been fully performed, it shall within thirty (30) days of the

ASARCO TACOMA SMELTER CONSENT DECREE
SECOND AMENDMENT PAGE 24

inspection submit to EPA for approval, with a copy to the State, a written report as
described in Section 3.2.2 of the SOW, requesting Certification of Completion.  In the
report, a registered professional engineer and Point Ruston's Project Coordinator shall
state that the Remedial Action has been completed in full satisfaction of the requirements
of this Second Amendment.  The written report shall include as-built drawings signed and
stamped by a professional engineer.  The report shall contain the following statement,
signed by a responsible corporate official of Point Ruston or Point Ruston' Project
Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that
> the information contained in or accompanying this submittal is true,
> accurate and complete.  I am aware that there are significant penalties for
> submitting false information, including the possibility of fine and
> imprisonment for knowing violations.

b.      If, after completion of the pre-certification inspection, receipt and
review of the written report, and reasonable opportunity to review and comment by the
State, EPA determines that the Remedial Action has not been completed in accordance
with this Second Amendment, EPA will notify Point Ruston in writing of the activities
that must be undertaken to complete the Remedial Action in accordance with this Second
Amendment.  EPA will set forth in the notice a schedule for performance of such
activities consistent with the Second Amendment, or require Point Ruston to submit a
schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans and Other
Submissions) of the Asarco Tacoma Smelter Consent Decree.  Point Ruston shall
perform all activities described in the notice in accordance with the specifications and

ASARCO TACOMA SMELTER CONSENT DECREE
SECOND AMENDMENT PAGE 25

schedules established pursuant to this Paragraph, subject to its right to invoke the dispute

resolution procedures set forth in Section XIX (Dispute Resolution) of the Asarco

Tacoma Smelter Consent Decree.

              c.     If EPA concludes, based on the initial or any subsequent report

requesting Certification of Completion and after a reasonable opportunity for review and

comment by the State, that the Remedial Action has been performed in full satisfaction of

this Second Amendment, EPA will promptly so certify in writing to Point Ruston.  This

certification shall constitute the Certification of Completion of the Remedial Action for

purposes of the Asarco Tacoma Smelter Consent Decree as modified by this Second

Amendment, including, but not limited to, Section XXI (Covenants Not to Sue by

Plaintiff).  Certification of Completion of the Remedial Action shall not affect Point

Ruston's obligations under the Asarco Tacoma Smelter Consent Decree as modified by

this Second Amendment.

U.     Paragraph 69 does not apply to Point Ruston.

V.     Paragraph 72 applies to Point Ruston, except for any obligations with respect to

payments required under Paragraph 69 of the Asarco Tacoma Smelter Consent Decree.

W.     Paragraph 75 applies to Point Ruston, except for the fourth sentence; provided

however, that the comprehensive general liability coverage shall have an annual aggregate limit

of not less than 2 million dollars; and except that Point Ruston shall maintain the required

coverage until the first anniversary of EPA's Final Certification of Completion of the Remedial

Action, pursuant to Paragraph 65 of the Asarco Tacoma Smelter Consent Decree as modified by Paragraph 17.T of this Second Amendment.

      X.      Paragraph 86 applies to Point Ruston except for the references to the "RDRs."

      Y.      Paragraph 87 applies to Point Ruston, except for the references to "RDRs" and except that the following stipulated penalties shall accrue for any noncompliance identified in subparagraph (b):

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $ 250 | 1st -- 14th day |
| $1,000 | 15th -- 30th day |
| $2,500 | 31st day and beyond. |

And except that in subparagraph (b), (ii) is deleted; (iii) is changed to read "Submission of addenda to the Remedial Action Work Plan and associated plans"; and (iv) is changed to read "Submission of corrected or revised Remedial Action Work Plans in accordance with Section XI (EPA Approval of Plans and Other Submissions)."

      Z.      Paragraph 88 applies to Point Ruston, except for the reference to the "RDRs," and except that the following stipulated penalties shall accrue for any noncompliance identified in Paragraph 88:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $200 | 1st -- 14th day |
| $300 | 15th -- 30th day |
| $750 | 31st day and beyond. |

ASARCO TACOMA SMELTER CONSENT DECREE
SECOND AMENDMENT PAGE 27

AA.     Paragraph 89 applies to Point Ruston, however as to Point Ruston, the $750,000 amount in Paragraph 89 shall be limited to $300,000.

BB.     Paragraph 97 applies only to Point Ruston's obligations as they relate to the Purchased Property, except for any part of the Purchased Property located within OU6. However, except with respect to future liability, the covenants not to sue as they relate to the Purchased Property (except for any part of the Purchased Property located within OU6) shall take effect upon the Effective Date of this Second Amendment.  Furthermore, as to Point Ruston, the covenants not to sue extend also to Point Ruston's officers, directors, and employees to the extent that the alleged liability of the officer, director, or employee is based on its status and in its capacity as an officer, director, or employee of Point Ruston, and not to the extent that the alleged liability arose independently of any alleged liability of Point Ruston.  As to the portions of the Site that are not part of the Purchased Property, or for any part of the Purchased Property located within OU6, the following covenants not to sue apply:

Subject to the Reservation of Rights in this Second Amendment, upon the Effective Date of this Second Amendment, the United States covenants not to sue or take any other civil or administrative action against Point Ruston for any and all civil liability for injunctive relief or reimbursement of response costs pursuant to Sections 106 or 107 of CERCLA, 42 U.S.C. §§ 9606 or 9607 or Section 7003 of RCRA, 42 U.S.C. § 6973, with respect to the Existing Contamination at the Site.  This covenant not to sue is conditioned on the satisfactory performance of Point Ruston's obligations under this Second Amendment.  This covenant not to sue extends to Point Ruston, and also to Point Ruston's officers, directors, and employees to the

ASARCO TACOMA SMELTER CONSENT DECREE
SECOND AMENDMENT PAGE 28

extent that the alleged liability of the officer, director, or employee is based on its status and in its capacity as an officer, director, or employee of Point Ruston, and not to the extent that the alleged liability arose independently of any alleged liability of Point Ruston.

CC.    Paragraph 98 applies only to Point Ruston's obligations as they relate to the Purchased Property (except for any part of the Purchased Property located within OU6).

DD.    Paragraph 99 applies only to Point Ruston's obligations as they relate to the Purchased Property (except for any part of the Purchased Property located within OU6).

EE.    Paragraph 100 applies only to Point Ruston's obligations as they relate to the Purchased Property (except for any part of the Purchased Property located within OU6). However, as to Point Ruston, for purposes of Paragraph 98, the information and conditions known to EPA shall also include any information received by EPA pursuant to the requirements of the Asarco Tacoma Smelter Consent Decree prior to May 1, 2006.  For purposes of Paragraph 99, the information and conditions known to EPA shall include, in addition to that described in the second sentence of Paragraph 100, the information and those conditions set forth in the OU6 ROD, the administrative record supporting the OU6 ROD, or any information received by EPA pursuant to the requirements of the Asarco Tacoma Smelter Consent Decree or this Second Amendment prior to Certification of Completion of the Remedial Action.

FF.    Paragraph 101 applies only to Point Ruston's obligations as they relate to the Purchased Property (except for any part of the Purchased Property located within OU6). However, as to Point Ruston subparagraphs (g) and (h) do not apply. As to the portions of the

Site that are not part of the Purchased Property or for any part of the Purchased Property located within OU6, the following reservations of rights apply:

The covenants not to sue set forth above do not pertain to any matters other than those expressly specified in Paragraph 97 of the Asarco Tacoma Smelter Consent Decree as modified by Paragraph 17.BB of this Second Amendment.  The United States reserves, and this Second Amendment is without prejudice to, all rights against Point Ruston with respect to all other matters, including the following:

      a.      Claims based on a failure by Point Ruston to meet a requirement of this Second Amendment;

      b.      Liability arising from the past, present, or future disposal, release, or threat of release of Waste Materials outside of the Site;

      c.      any liability resulting from future releases of hazardous substances, pollutants or contaminants, at or from the Site caused or contributed to by Point Ruston, its successors, assignees, lessees or sublessees;

      d.      any liability resulting from the release or threat of release of hazardous substances, pollutants or contaminants, at the Site after the effective date of this Second Amendment, not within the definition of Existing Contamination;

      e.      criminal liability;

      f.      liability, if any, for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessment incurred by federal agencies other than EPA; and

g.      any liability resulting from exacerbation by Point Ruston, its

successors, assignees, lessees or sublessees, of Existing Contamination other than as

provided in the ROD, the Work, or otherwise ordered by EPA; and

h.      liability for violations of local, State or federal law or regulations. With respect to

any claim or cause of action asserted by the United States, Point Ruston shall bear the

burden of proving that the claim or cause of action, or any part thereof, is attributable

solely to Existing Contamination.

GG.      Paragraph 105.b does not apply to Point Ruston.  However, except as provided in

Paragraph 111 of the Asarco Tacoma Smelter Consent Decree, Point Ruston's covenants not to

sue shall not apply in the event that the United States brings a cause of action or issues an order

pursuant to the reservations set forth in Paragraph 101 of the Asarco Tacoma Smelter Consent

Decree as modified by Paragraph 17.FF of this Second Amendment, but only to the extent that

Point Ruston's claims arise from the same response action, response costs, or damages, that the

United States is seeking pursuant to the applicable reservation.

HH.      Paragraph 115 applies to Point Ruston, except that the time periods specified in

the first and second sentences shall terminate ten (10) years after Point Ruston receives the

Certification of Completion for the final Phase of Remedial Action.

II.      Paragraph 117 does not apply to Point Ruston.

JJ.      Written notice to Point Ruston under Paragraph 118 shall be directed to the

following persons, unless Point Ruston gives notice of a change to the other Parties in writing:

Sue O'Neill
5219 North Shirley Street, Suite 100

ASARCO TACOMA SMELTER CONSENT DECREE
SECOND AMENDMENT PAGE 31

Ruston, Washington 98407

Mike Cohen
5219 North Shirley Street, Suite 100
Ruston, Washington 98407

Rodney L. Brown, Jr.
Cascadia Law Group, PLLC
1201 Third Avenue, Suite 320
Seattle, Washington 98101

KK.     Paragraph 121 applies to Point Ruston, except that Appendices B, C, and D do not

apply to Point Ruston.  In addition, the following new appendices are attached to and

incorporated into this Second Amendment:

"Appendix E" is the map depicting the Site as defined in this Second Amendment.

"Appendix F" is the Statement of Work as defined in this Second Amendment.

"Appendix G" are the Personal Guarantees described in Paragraph 17.R of this Second

Amendment.

## III.     ADDITIONAL RIGHTS, BENEFITS, AND OBLIGATIONS OF POINT RUSTON

18.     Legally Required Notices.  Point Ruston shall provide all legally required notices

with respect to the discovery or release of any hazardous substances at the Site.

19.     Cooperation, Assistance, and Access.  Point Ruston shall provide full cooperation,

assistance, and access to persons that are authorized to conduct response actions or natural

resource restoration at the Site (including the cooperation and access necessary for the

installation, integrity, operation, and maintenance of any complete or partial response actions or

natural resource restoration at the Site).

ASARCO TACOMA SMELTER CONSENT DECREE
SECOND AMENDMENT PAGE 32

20.    <u>Assignment or Transfer</u>.  Notwithstanding any other provision of this Second Amendment, all of the obligations, rights, and benefits conferred upon Point Ruston under this Second Amendment may be assigned or transferred to any person with the written approval of the United States, Point Ruston, the Court, and the assignee or transferee.

## IV.    <u>MISCELLANEOUS PROVISIONS</u>

21.    The Effective Date of this Second Amendment shall be the last date of the following:  (1) entry of this Second Amendment; (2) all necessary approvals by the Bankruptcy Court of this Second Amendment; (3) execution of the Agreement for Release of Federal Lien and any necessary approvals of that agreement by the Bankruptcy Court; and (4) Point Ruston's actual acquisition of the Purchased Property under the terms and conditions set forth in the Tacoma Purchase Agreement approved by the Bankruptcy Court.

22.    This Second Amendment is dependent upon Point Ruston acquiring the Purchased Property under the terms and conditions set forth in the Tacoma Purchase Agreement approved by the Bankruptcy Court.  Should Point Ruston not acquire the Purchased Property, the Second Amendment will be deemed null and void.

23.    Asarco LLC is executing this Second Amendment to facilitate the sale of the Purchased Property to Point Ruston and the assumption by Point Ruston of certain of Asarco's remaining obligations under the Asarco Tacoma Smelter Consent Decree.  The effectiveness of Asarco's signature to this Second Amendment is expressly subject to approval of the Bankruptcy Court.  However, by signing this Second Amendment, Asarco LLC does not waive, and explicitly preserves to the extent possible, any defenses and offsets it possesses to claims against

it relating to Operable Unit 02 and Operable Unit 06 in Tacoma, Washington, including without

limitation defenses related to Asarco LLC's current status in bankruptcy and the discharge it

expects to obtain in that bankruptcy, as well as any defenses associated with the Arizona consent

decree.

      24.     This Second Amendment shall be lodged with the Court for a period of not less

than thirty (30) days for public notice and comment in accordance with Section 122(d)(2) of

CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7.  The United States reserves the right to

withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or

considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate.

Point Ruston consents to the entry of this Consent Decree without further notice.

SO ORDERED THIS 23rd DAY OF October, 2006.

ROBERT J. BRYAN
United States District Judge

THE UNDERSIGNED PARTIES enter into this Second Amendment to Asarco Tacoma Smelter Consent Decree in the matter of United States v. ASARCO Incorporated, relating to the Asarco Tacoma Smelter Site, Operable Units 02 and 06 of the Commencement Bay Nearshore/ Tideflats Superfund Site.

FOR POINT RUSTON, LLC:

Date:    6/29/06                S/_____

Michael A. Cohen
Manager

WE HEREBY CONSENT to the entry of the Second Amendment to Consent Decree in United States v. Asarco Inc. and Point Ruston, LLC, subject to the public notice requirements of 28 C.F.R. §50.7.

      FOR THE UNITED STATES OF AMERICA:


s/_____
MATT MCKEOWN
Principal Deputy Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, DC 20530


s/_____
DAVID L. DAIN
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
(202) 514-3644


JOHN McKAY
United States Attorney
Western District of Washington

BRIAN KIPNIS
Civil Chief, Office of the United States Attorney
Western District of Washington
700 Stewart Street, Suite 5220
Seattle, WA  98101-1271


ASARCO TACOMA SMELTER CONSENT DECREE
SECOND AMENDMENT PAGE 37

THE UNDERSIGNED PARTIES enter into this Second Amendment to Asarco Tacoma Smelter Consent Decree in the matter of United States v. ASARCO Incorporated, relating to the Asarco Tacoma Smelter Site, Operable Units 02 and 06 of the Commencement Bay Nearshore/Tideflats Superfund Site.

S/_____
Douglas E. McAllister
Executive Vice President, General Counsel and Secretary
ASARCO LLC
1150 North 7th Avenue
Tucson, Arizona 85705


S/_____
Thomas L. Aldrich
Vice President Environmental Affairs
ASARCO LLC
1150 North 7th Avenue
Tucson, AZ   85705

ASARCO TACOMA SMELTER CONSENT DECREE
SECOND AMENDMENT PAGE 38

S/_____
Ronald A. Kreizenbeck
Acting Regional Administrator
U.S. Environmental Protection Agency
1200 Sixth Avenue
Seattle, Washington 98101


S/_____
Cara Steiner-Riley
Assistant Regional Counsel
U.S. Environmental Protection Agency
1200 Sixth Avenue
Seattle, Washington 98101

ASARCO TACOMA SMELTER CONSENT DECREE
SECOND AMENDMENT PAGE 39